IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, individually, and as subrogee of, KEN ALLEN d/b/a ALLEN ENTERPRISES, AE ROOFING & EXTERIORS, INC., and KEN ALLEN ENTERPRISES, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>A.G.O. CONTRACTING, INC., JUAN ADAME, individually, and d/b/a TEXAS QUALITY INSURANCE GROUP d/b/a QUALITY INSURANCE SERVICES, and TEXAS QUALITY INSURANCE GROUP, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)  JURY DEMAND<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Auto-Owners Insurance Company, individually, and as subrogee of, Ken Allen d/b/a Allen Enterprises, AE Roofing and Exteriors, Inc., and Ken Allen Enterprises, LLC, for their Complaint against the above-named Defendants, state to the Court as follows:

1

# I. PARTIES

1. Plaintiff, **Auto-Owners Insurance Company** ("Auto-Owners"), is a Michigan corporation and is duly licensed and authorized to write insurance in the State of Tennessee. Auto-Owners maintains an office in Brentwood, Tennessee.

2. Defendant, **A.G.O. Contracting, Inc.** ("A.G.O. Contracting"), is a Texas corporation with its principal place of business located at 3282 River Ridge Boulevard, Grand Prairie, Ferris County, Texas 75050. A.G.O. Contracting, Inc. was not registered to do business in Tennessee at the time of all events relevant to this action. Moreover, the entity forfeited its charter due to nonpayment of taxes on September 10, 2010, which was not reinstated until October 3, 2013.

3. Defendant, **Texas Quality Insurance Group, LLC** ("Quality Insurance"), was a Texas limited liability company located at 1800 N. Beltline Road, Suite 110, Irving, Texas 75061, which did business as, Quality Insurance Services. Quality Insurance was administratively dissolved on October 22, 2010 due to a tax forfeiture.

4. Defendant, **Juan Adame** ("Mr. Adame"), is a resident of Texas. He held himself out as being an insurance agent for Texas Quality Insurance Group d/b/a Quality Insurance Services. According to the Texas Department of Insurance, Juan Adame is not a licensed insurance agent.

## II. JURISDICTION AND VENUE

5. This action is between citizens and entities of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00, so this Court has jurisdiction under 28 U.S.C. § 1332.

6. The acts and omissions giving rise to this action occurred in this district. The contract between AE Roofing and A.G.O. Contracting was entered in Davidson County, Tennessee; the Certificate of Insurance was provided by A.G.O. Contracting's alleged insurer, Quality Insurance, to AE Roofing in Davidson County, Tennessee; the work under the contract between AE Roofing and A.G.O. Contracting was performed in Davidson County, Tennessee, Selvin Calderon was injured in Davidson County, Tennessee, and Auto-Owners' workers compensation policy was issued to its insureds in Davidson County, Tennessee. Venue is therefore proper under 28 U.S.C. § 1391(a) and (c).

## III. FACTS

7. Auto-Owners provided workers compensation coverage to Ken Allen d/b/a Allen Enterprises under Policy No. 101719 03039589 with dates of coverage of May 4, 2012 to May 4, 2013. At the time the policy was issued, AE Roofing and Exteriors, Inc. ("AE Roofing") was operating as a division of Ken Allen Enterprises, LLC ("Ken Allen Enterprises").

8. In 2012, AE Roofing was retained to complete a roofing job at 3636 Valley Vista Road, Nashville, Davidson County, Tennessee 37205 (the "Work Site").

9. AE Roofing subcontracted the work to A.G.O. Contracting, Inc. ("AGO Contracting").

10. On April 19, 2012, AE Roofing and A.G.O. Contracting entered an Independent Contractor Agreement, a true and correct copy of which is attached as **Exhibit A.** That Agreement defines A.G.O. Contracting as the "Contractor". Paragraph 12 of that Agreement provides: "**Insurance.** The Contractor will be responsible to carry liability and workers compensation insurance relative to any service that they perform for the Company. At no point will AE Roofing and Exteriors or Ken Allen Enterprise, LLC be liable for the Contractor." The Agreement further provides that Tennessee law will govern its validity, construction, and interpretation.

11. Upon information and belief, in order to be awarded the contract to perform the work at the Work Site, A.G.O. Contracting agreed to provide documentation to AE Roofing confirming that A.G.O. Contracting had workers compensation coverage for its workers.

12. Upon information and belief, the owner of A.G.O. Contracting, Gabriel Arpero, contacted Juan Adame, whom he understood to be an owner and insurance agent for Quality Insurance Services. Mr. Adame and Quality Insurance accepted premiums from A.G.O. Contracting for workers compensation coverage, agreed to provide A.G.O. Contracting with workers compensation coverage, and issued Certificates of Liability Insurance to AE Roofing and other general contractors indicating that A.G.O. Contracting had valid workers compensation coverage. A

true and correct copy of the Certificate of Liability Insurance provided to AE Roofing is attached as **Exhibit B**.

13. Upon information and belief, A.G.O. Contracting, Inc., by and through its owner, Gabriel Arpero, hired a roofing crew in Atlanta, Georgia, that was led by Marvin Calderon, to complete the roofing job at the Work Site.

14. Upon information and belief, Marvin Calderon traveled from Atlanta, Georgia to Nashville, Tennessee with a roofing crew that included himself, Jose Calderon, and Selvin Calderon.

15. Upon information and belief, Selvin Calderon is a foreign national, citizen of Guatemala, who currently resides in Smyrna, Georgia.

16. Upon information and belief, on or about May 15, 2012, Selvin Calderon, a member of the roofing crew, fell from the roof of the house at the Work Site and was injured.

17. Following his injury, Selvin Calderon, by and through counsel, commenced a workers compensation action in Georgia against Gabriel Arpero d/b/a A.G.O. Contracting Inc. and Ken Allen d/b/a AE Roofing and Exteriors, LLC; Case No. 2012-017962. The case was ultimately dismissed due to lack of jurisdiction.

18. Selvin Calderon then commenced a workers compensation action against Auto-Owners Insurance Company, AE Roofing & Exteriors, LLC, and A.G.O. Contracting, Inc. in the Circuit Court of Davidson County, Tennessee; Case No. 13C-2419. Mr. Calderon later amended his Complaint to include Ken Allen Enterprise, LLC.

5

19. Based on the allegations made in Selvin Calderon's Tennessee workers compensation action, he sustained a spinal fracture and complete spinal cord injury, which have left him permanently paralyzed and dependent on the use of a wheelchair, and he incurred medical expenses in excess of $188,000.00. Mr. Calderon is suing to recover benefits under the Tennessee Workers Compensation Act, including temporary total disability benefits, statutory medical benefits, reimbursement for medical expenses, and permanent disability benefits.

20. Upon information and belief, A.G.O. Contracting failed to obtain valid workers compensation coverage for its workers. Its insurance agent, Juan Adame, who allegedly owned Quality Insurance Service, allegedly issued a fraudulent Certificate of Insurance that purported to show that A.G.O. Contracting had workers compensation coverage through an insurer called "Allrisk." Upon information and belief, A.G.O. Contracting has since learned that Allrisk is an insurance broker, and not an insurer, and that it had no valid workers compensation coverage at the time of the loss.

21. Although Selvin Calderon was not the statutory employee of Ken Allen, AE Roofing, or Ken Allen Enterprises, upon information and belief, Auto-Owners is required to provide workers compensation benefits to Mr. Calderon pursuant to Tenn. Code Ann. § 50-6-914.

22. Auto-Owners has paid amounts to Mr. Calderon for wages, paid for his medical examination, and incurred liability for workers compensation payments to Mr. Calderon, which amounts exceed $75,000.00.

23. As the insurer of Ken Allen, and as a result of paying the above amounts and being required to pay future amounts to Selvin Calderon, Auto-Owners specifically invokes and relies upon the subrogation clauses and provisions in its policy of insurance and further avers that it is subrogated to all of the rights of Ken Allen, AE Roofing and Ken Allen Enterprises.

## IV.   CLAIMS

### A. Breach of Independent Contractor Agreement by A.G.O. Contracting – Contractual Right of Subrogation

24. Auto-Owners incorporates the allegations contained in paragraphs 1-23 of this Complaint as restated fully herein.

25. As the workers compensation insurer for AE Roofing, Auto-Owners has a contractual right of subrogation against A.G.O. Contracting.

26. On April 19, 2012, AE Roofing and A.G.O. Contracting entered an Independent Contractor Agreement, a true and correct copy of which is attached as **Exhibit A.** That Agreement defined AE Roofing as the "Company" and "A.G.O. Contracting" as the "Contractor." Paragraph 12 of that Agreement provides: "**Insurance**. The Contractor will be responsible to carry liability and workers compensation insurance relative to any service that they perform for the Company. At no point will AE Roofing and Exteriors or Ken Allen Enterprise, LLC be liable for the Contractor."

27. AE Roofing fulfilled all of its obligations under the Independent Contractor Agreement.

7

28.  Contrary to the express terms of the Independent Contractor Agreement, A.G.O. Contracting failed to carry workers compensation covering its employees, including, but not limited to Selvin Calderon, while they were performing services at the work site.

29.  As a result of A.G.O. Contracting's breach of the Independent Contractor Agreement, AE Roofing incurred liability under the Tennessee Workers Compensation Act for the injuries sustained by Mr. Calderon during the course and scope of his work at the Work Site on May 15, 2012. If A.G.O. Contracting had obtained the workers compensation coverage required by the Independent Contractor Agreement, AE Roofing would not have been required to provide workers compensation benefits to Mr. Calderon pursuant to Tenn. Code Ann. § 50-6-914 or otherwise.

**B. Breach of Independent Contractor Agreement by A.G.O. Contracting – Third-Party Beneficiary**

30.  Auto-Owners incorporates the allegations contained in paragraphs 1-29 of this Complaint as if restated fully herein.

31.  Auto-Owners was a third-party beneficiary of the Independent Contractor Agreement between AE Roofing and A.G.O. Contracting.

32.  The Independent Contractor Agreement does not indicate that the parties to it agreed that there would be no third-party-beneficiaries.

33.  In order to effectuate the intention of AE Roofing and A.G.O. Contracting that the insurer for AE Roofing would not be required to provide workers compensation coverage to anyone hired by A.G.O. Contracting, it is appropriate to

8

recognize Auto-Owners' right to performance under the Independent Contractor Agreement.

34. Both the terms of the Independent Contractor Agreement and the circumstances indicate that performance of A.G.O. Contracting's promise to provide insurance coverage was intended to satisfy an obligation owed by A.G.O. Contracting to Auto-Owners.

35. As a result of A.G.O. Contracting's breach of the Independent Contractor Agreement, Auto-Owners sustained damages when it incurred liability under the Tennessee Workers Compensation Act for the injuries sustained by Mr. Calderon during the course and scope of his work at the Work Site on May 15, 2012.

C. **Breach of Contract to Insure by Quality Insurance – Third-Party Beneficiary**

36. Auto-Owners incorporates the allegations contained in paragraphs 1-35 of this Complaint as if restated fully herein.

37. Upon information and belief, since 2008, A.G.O. Contracting, by and through its owner, Gabriel Arpero, paid premiums to Texas Quality Insurance Group, LLC (Quality Insurance "Services") in exchange for liability and workers compensation coverage.

38. Juan Adame, an employee of Quality Insurance, repeatedly represented to A.G.O. Contracting that it had workers compensation coverage for its employees. Mr. Adame made those statements within the course and scope of his employment by Quality Insurance. As such, Quality Insurance is vicariously liable for his acts and omissions.

39. Quality Insurance, by and through Mr. Adame, issued Certificates of Insurance to A.G.O. Contracting purporting to show that it had been issued workers compensation coverage by Allrisk from April 3, 2012 to April 3, 2013. Upon information and belief, Allrisks is an insurance broker and is not an insurance carrier. As such, allegedly unbeknownst to A.G.O. Contracting, it had no workers compensation coverage on May 15, 2012, when Mr. Calderon was injured.

40. Auto-Owners, AE Roofing, and Ken Allen Enterprises were third-party beneficiaries of the contract to provide workers compensation coverage between A.G.O. Contracting and Quality Insurance.

41. In order to effectuate the intention of A.G.O. Contracting and Quality Insurance that A.G.O. Contracting would have workers compensation coverage, so that AE Roofing, Ken Enterprise, and Auto-Owners would not have to provide coverage for its workers, it is appropriate to recognize Auto-Owners', AE Roofing's, and Ken Allen Enterprises' right to performance under the contract to insure.

42. Both the terms of the contract to insure and the circumstances indicate that performance of the contract to insure between A.G.O. Contracting and Quality Insurance was intended to satisfy an obligation owed by A.G.O. Contracting to AE Roofing and Ken Allen Enterprises and their insurer, Auto-Owners.

43. As a result of Quality Insurance's breach of the contract to provide workers compensation coverage to A.G.O. Contracting, Plaintiffs sustained damage when they incurred liability under the Tennessee Workers Compensation Act for

the injuries sustained by Mr. Calderon during the course and scope of his work at the Work Site on May 15, 2012.

### D. Intentional Misrepresentation of Quality Insurance and Mr. Adame

44. Auto-Owners incorporates the allegations contained in paragraphs 1-43 of this Complaint as if they are restated fully herein.

45. Quality Insurance and Mr. Adame represented to A.G.O. Contracting and Mr. Arpero that it was providing A.G.O. Contracting with workers compensation coverage with dates of coverage from April 3, 2012 to April 3, 2013. That representation was confirmed in the Certificate of Insurance issued by Quality Insurance, a true and correct copy of which is attached as **Exhibit B**.

46. Quality Insurance and Mr. Adame did not obtain workers compensation coverage for A.G.O. Contracting with dates of coverage from April 3, 2012 to April 3, 2013.

47. Quality Insurance and Mr. Adame knew the representation was false at the time it was made and issued the false Certificate of Insurance to conceal their fraudulent conduct.

48. Quality Insurance and Mr. Adame intended for A.G.O. Contracting to rely on their representations and would act by paying a premium for the workers compensation coverage.

49. Quality Insurance and Mr. Adame intended and had reason to expect that the representation of workers compensation coverage would be communicated to AE Roofing, Ken Allen Enterprises, and their insurer, Auto-Owners, and that the

11

communication would influence their conduct in the transaction of business with A.G.O. Contracting. Specifically, these Defendants had reason to expect that AE Roofing and Ken Allen Enterprises would rely on the representation of coverage and the Certificate of Insurance in entering the Independent Contractor Agreement with A.G.O. Contracting. They also had reason to expect that the Certificate of Insurance would be provided to others seeking to do business with A.G.O. Contracting, including AE Roofing and Ken Allen Enterprises.

50. It was reasonable for AE Roofing and Ken Allen Enterprises to rely on the representation that A.G.O. Contracting had workers compensation coverage and the validity of the Certificate of Insurance provided by Quality Insurance and Mr. Adame.

51. Quality Insurance and Mr. Adame intended or had reason to expect that their representations of coverage and the Certificate of Insurance would influence A.G.O. Contracting to pay them a premium and would influence AE Roofing and Ken Allen Enterprises to do business with A.G.O. Contracting and to enter the Independent Contractor Agreement with it.

52. As a result of the misrepresentations of Quality Insurance and Mr. Adame, Plaintiffs were damaged.

53. As a result of these Defendants' intentional and fraudulent conduct, Plaintiff is also entitled to an award of punitive damages against them.

### E. Promissory Estoppel of Quality Insurance and Mr. Adame

54. Auto-Owners incorporates the allegations contained in paragraphs 1-53 of this Complaint as if restated fully herein.

55. Quality Insurance, by and through its employee, Mr. Adame, promised A.G.O. Contracting that it would provide it with workers compensation from April 3, 2012 to April 3, 2013.

56. Quality Insurance, by and through Mr. Adame, provided A.G.O. Contracting with a Certificate of Insurance purporting to show that it had been issued workers compensation coverage for that period.

57. Quality Insurance and Mr. Adame represented that A.G.O. Contracting had received workers compensation coverage in exchange for its payment of the premiums and issued the Certificate of Insurance, attached as Exhibit B, so that A.G.O. Contracting would relying on that representation.

58. Quality Insurance and Mr. Adame should reasonably have expected their representations to induce forbearance on the part of the promisee, A.G.O. Contracting, and third-persons (AE Roofing, Ken Allen Enterprises, and their insurer, Auto-Owners). Quality Insurance and Mr. Adame issued Certificates of Insurance purporting to show that it had issued workers compensation coverage to A.G.O. Contracting when, in fact, no such coverage was ever obtained by them.

59. Plaintiffs' reliance on the misrepresentations of Quality Insurance and Mr. Adame were reasonable under the circumstances.

13

60. The detriment to Plaintiffs was substantial in that they became responsible for providing workers compensation coverage to Mr. Calderon.

61. It was foreseeable that AE Roofing, Ken Allen Enterprises, and Auto-Owners would sustain a substantial loss due to their reliance on the Certificates of Insurance provided by Quality Insurance and Mr. Adame.

62. As a result of these Defendants' intentional and fraudulent conduct, Plaintiff is also entitled to an award of punitive damages against them.

## V. PRAYER FOR RELIEF

Wherefore, Auto-Owners, individually, and as subrogee of, Ken Allen d/b/a Allen Enterprises, AE Roofing and Exteriors, Inc. and Ken Allen Enterprises, LLC, prays that this Court grant judgment in its favor against these Defendants for the following:

(a) actual damages in excess of $75,000.00;

(b) punitive damages;

(c) pre-and post-judgment interest;

(d) all costs of this cause;

(e) that this case be tried to a jury; and

(f) such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Thomas W. Shumate IV
Thomas W. Shumate, IV (#19595)
John J. Griffin, Jr. (#15446)
KAY, GRIFFIN, ENKEMA, & BROTHERS
222 Second Ave. North, Suite 340-M
Nashville, TN 37201
(615) 742-4800
tom.shumate@kaygriffin.com

15



## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is entered into as of the 19 day of April, 2012, between AE Roofing and Exteriors ("the Company") and A&O Contracting Inc ("the Contractor").

1. **Independent Contractor.** Subject to the terms and conditions of this Agreement, the Company hereby engages the Contractor as an independent contractor to perform the services set forth herein, and the Contractor hereby accepts such engagement.

2. **Duties, Term, and Compensation.** The Contractor's duties, term of engagement, compensation and provisions for payment thereof shall be as set forth in the estimate previously provided to the Contractor by the Company and which is attached as Exhibit A, which may be amended in writing from time to time, or supplemented with subsequent estimates for services to be rendered by the Contractor and agreed to by the Company, and which collectively are hereby incorporated by reference.

3. **Expenses.** During the term of this Agreement, the Contractor shall bill and the Company shall reimburse for all reasonable and approved out-of-pocket expenses which are incurred in connection with the performance of the duties hereunder. Notwithstanding the foregoing, expenses for the time spent by Contractor in traveling to and from Company facilities shall not be reimbursable.

4. **Confidentiality.** The Contractor acknowledges that during the engagement (the contractor) will have access to and become acquainted with various trade secrets, inventions, innovations, processes, information, records and specifications owned or licensed by the Company and/or used by the Company in connection with the operation of its business including, without limitation, the Company's business and product processes, methods, customer lists, accounts and procedures. The Contractor agrees that they will not disclose any of the aforesaid, directly or indirectly, or use any of them in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement with the Company. All files, records, documents, blueprints, specifications, information, letters, notes, media lists, original artwork/creative, notebooks, and similar items relating to the business of the Company, whether prepared by the Contractor or otherwise coming into their possession, shall remain the exclusive property of the Company. The Contractor shall not retain any copies of the foregoing without the Company's prior written permission. Upon the expiration or earlier termination of this Agreement, or whenever requested by the Company, the Contractor shall immediately deliver to the Company all such files, records, documents, specifications, information, and other items in their possession or under their control. The Contractor further agrees that they will not disclose their retention as an independent contractor or the terms of this Agreement to any person without the prior written consent of the Company and shall at all times preserve the confidential nature of their relationship to the Company and of the services hereunder.

7. **Conflicts of Interest.** The Contractor represents that they are free to enter into this Agreement, and that this engagement does not violate the terms of any agreement between the Contractor and any third party. Further, the Contractor, in rendering their duties shall not utilize any invention, discovery, development, improvement, innovation, or trade secret in which the contractor does not have a proprietary interest.

8. **Right to Injunction.** The parties hereto acknowledge that the services to be rendered by the Contractor under this Agreement and the rights and privileges granted to the Company under the Agreement are of a special, unique, unusual, and extraordinary character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in any action at law, and the breach by the Contractor of any of the provisions of this Agreement will cause the Company irreparable injury and damage. The Contractor expressly agrees that the Company shall be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by the Contractor. Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies that the Company may have for damages or otherwise. The various rights and remedies of the Company under this Agreement or otherwise shall be construed to be cumulative, and no one of them shall be exclusive of any other or of any right or remedy allowed by law.

9. **Merger.** This Agreement shall not be terminated by the merger or consolidation of the Company into or with any other entity.

10. **Termination.** The Company may terminate this Agreement at any time by 2 working days' written notice to the Contractor. In addition, if the Contractor is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directive of the Company, is guilty of serious misconduct in connection with performance hereunder, or materially breaches provisions of this Agreement, the Company at any time may terminate the engagement of the Contractor immediately and without prior written notice to the Contractor.

11. **Independent Contractor.** This Agreement shall not render the Contractor an employee, partner, agent of, or joint venturer with

EXHIBIT A

the Company for any purpose. The Contractor is and will remain an independent contractor in their relationship to the Company. The Company shall not be responsible for withholding taxes with respect to the Contractor's compensation hereunder. The Contractor shall have no claim against the Company hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

12. Insurance. The Contractor will be responsible to carry liability and workers comp insurance relative to any service that they perform for the Company. At no point will AE Roofing and Exteriors or Ken Allen Enterprise LLC be liable for the Contractor.

13. Successors and Assigns. All of the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, if any, successors, and assigns.

14. Choice of Law. The laws of the state of Tennessee shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto.

15. Arbitration. Any controversies arising out of the terms of this Agreement or its interpretation shall be settled in Tennessee in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof.

16. Headings. Section headings are not to be considered a part of this Agreement and are not intended to be a full and accurate description of the contents hereof.

17. Waiver. Waiver by one party hereto of breach of any provision of this Agreement by the other shall not operate or be construed as a continuing waiver.

18. Assignment. The Contractor shall not assign any of their rights under this Agreement, or delegate the performance of any of their duties hereunder, without the prior written consent of the Company.

19. Notices. Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service.

20. Modification or Amendment. No amendment, change or modification of this Agreement shall be valid unless in writing signed by the parties hereto.

21. Entire Understanding. This document and any exhibit attached constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

22. Unenforceability of Provisions. If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The parties hereto agree that facsimile signatures shall be as effective as if originals.

AE Roofing and Exteriors
By: _____
Its: _____ [title or position]


Contractors name or company name
By: Gabriel Arpas
Its: President [title or position]

*Will Email over new copy for $2,000,000 in General Aggregate per Gabriel @ 1:00 on 04/16/12*

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 04/12/2012

| PRODUCER | |
|---|---|
| Quality Insurance Services<br>1800 N Beltline RD Ste 110<br>Irving, TX 75061<br>972-790-2221<br>972-790-4131 Fax | THIS CERTIFICATION IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURED: AGO Contracating Inc<br>3282 River Ridge<br>Grand Prairie, TX 75050 | |
| INSURER A: Allrisks MGA | |
| INSURER B: Allrisks MGA | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| | | **GENERAL LIABILITY**<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS MADE [X] OCCUR | UA11184675 | 04/03/2012 | 04/03/2013 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | $ |
| | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | GENERAL AGGREGATE | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[X] POLICY [ ] PROJECT [ ] LOC | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | | **AUTOMOBILE LIABILITY**<br>[ ] ANY AUTO<br>[ ] ALL OWNED AUTOS<br>[ ] SCHEDULED AUTOS<br>[ ] HIRED AUTOS<br>[ ] NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY**<br>[ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN AUTO ONLY: EA ACC / AGG | $ |
| | | **EXCESS/UMBRELLA LIABILITY**<br>[ ] OCCUR [ ] CLAIMS MADE<br>[ ] DEDUCTIBLE<br>[ ] RETENTION $ | | | | EACH OCCURRENCE | $ |
| | | | | | | AGGREGATE | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>If yes, describe under SPECIAL PROVISIONS below | WC3466854 | 04/03/2012 | 04/03/2013 | [X] WC STATU-TORY LIMITS / OTHER | |
| | | | | | | E.L. EACH ACCIDENT | $ 500,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |
| | | OTHER | | | | | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS
Covered in Tennessee

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Ken Allen Enterprise<br>AE Roofing Exteriors<br>108 Midtown CT Hendersonville, TN 37075 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08) © ACORD

**EXHIBIT B**